Filed 1/17/24  P. v. Gomez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>THOMAS GOMEZ,<br><br>    Defendant and Appellant. | B328172<br><br>Los Angeles County<br>Super. Ct. No. A023069 |

APPEAL from an order of the Superior Court of Los Angeles County, Chet L. Taylor, Judge. Affirmed.

Thomas Gomez, in pro. per.; and Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

## INTRODUCTION

In 1983, a jury found defendant Thomas Gomez guilty of first degree murder and found true the special circumstance allegation that he intentionally murdered the victim for financial gain. Almost forty years later, Gomez petitioned for resentencing under Penal Code section 1170.95.[1] The trial court denied the petition, and Gomez appealed. His appellate counsel filed a brief under *People v. Delgadillo* (2022) 14 Cal.5th 216. Gomez subsequently filed a supplemental brief. Essentially, he argues the court improperly denied his petition based on the appellate opinion in his direct appeal, the jury should never have been given aiding and abetting instructions because the People's primary theory at trial was that he was the actual shooter, and he was not the actual shooter because the jury found that he did not personally use a firearm during the commission of the murder. We affirm.

## BACKGROUND

According to the opinion in Gomez's direct appeal, *People v. Gomez* (Aug. 5, 1985, 2d Crim. No. 44338) [nonpub. opn.] (*Gomez*), Joan Ponce hired Gomez and David Ramos to kill her husband, Febrilium Ponce, for $10,000.[2] He was killed in March 1981 as a result of a gunshot to his head while sitting in his truck. After the murder, Joan Ponce gave Gomez a $2,000 down

---

[1] Undesignated statutory references are to the Penal Code. Section 1170.95 was renumbered to section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.) We hereafter cite to section 1172.6 for ease of reference.

[2] We granted his request for judicial notice of *Gomez* on September 6, 2023.

payment and Gomez told his girlfriend that he received the money for killing Joan Ponce's husband.

In an information filed in August 1981, Gomez and Joan Ponce were charged with one count of murder under section 187. The information alleged the special circumstance allegation that they intentionally murdered Febrilium Ponce for financial gain under section 190.2, subdivision (a)(1). It also alleged that Gomez personally used a firearm during the commission of the murder under sections 12022.5 and 1203.06. Joan Ponce pleaded guilty to first degree murder; Ramos, who was charged in a separate information, was convicted of first degree murder. (*Gomez, supra,* 2d Crim. No. 44338 at p. 2, fn. 1.)

In 1983, a jury found Gomez guilty of first degree murder as charged in the information. The jury also found true the special circumstance allegation that he intentionally murdered Febrilium Ponce for financial gain. The jury, however, found not true the allegation that Gomez personally used a firearm during the commission of the murder. Gomez was sentenced to life imprisonment without the possibility of parole.

On January 26, 2022, Gomez filed a form petition for resentencing under section 1172.6. The court appointed counsel to represent him. The People opposed the petition on the ground that Gomez was ineligible for resentencing because he intended to kill the victim. With their opposition, the People submitted the jury instructions, verdicts, and the information. Although he was represented by counsel, Gomez filed his own handwritten reply. Later, Gomez, through his appointed counsel, filed a reply which did not advance any legal arguments other than attaching a copy of Gomez's handwritten reply.

3

The court conducted a hearing on the petition on January 12, 2023. Gomez's counsel stated that he and Gomez had a difference of opinion and asked the court to allow Gomez to address the court directly. Gomez then told the court that the jury should never have been given the aiding and abetting instructions because the People's primary theory at trial was that he was the "trigger man." After hearing from Gomez and the attorneys, the court stated that it had reviewed the appellate opinion and the jury instructions. The court also noted that the evidence presented at trial, and which was not disputed by Gomez in connection with the petition, established that Gomez agreed to kill Joan Ponce's husband with Ramos's assistance and that Gomez received a down payment of $2,000 for the murder. After acknowledging the not true finding on the personal use of the firearm allegation, the court found that Gomez was the actual killer or aided and abetted Joan Ponce in murdering her husband and denied the petition.

This timely appeal followed. Gomez's appellate counsel filed an opening brief that raised no issues and asked this court to conduct appellate review under *Delgadillo*. Gomez filed a supplemental brief that argues the court improperly denied his petition based on the appellate opinion in his direct appeal, the jury should never have been given aiding and abetting instructions because the People's primary theory at trial was that he was the actual shooter, and he was not the actual shooter because the jury found that he did not personally use a firearm during the commission of the murder.

4

# DISCUSSION

As amended by Senate Bill No. 775, section 1172.6, subdivision (a) provides: "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts."

An offender must file a petition in the sentencing court averring that: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[;] [¶] [and] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(1)–(3); see also *id.*, subd. (b)(1)(A).) Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel." (*Id.*, subd. (b)(1)(C).)

"Upon receiving a petition in which the information required by this subdivision is set forth or a petition where any

5

missing information can readily be ascertained by the court, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1172.6, subd. (b)(3).) The prosecutor shall file a response within 60 days of the service of the petition, and the petitioner may file a reply within 30 days of the response. (*Id*., subd. (c).) When briefing has been completed, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (*Ibid*.) "If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (*Ibid*.)

In determining whether a petitioner has made a prima facie showing of entitlement to relief, the trial court's inquiry will necessarily be informed by the record of conviction, which will facilitate the court in distinguishing "petitions with potential merit from those that are clearly meritless." (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) The court is prohibited from engaging in " 'factfinding involving the weighing of the evidence or the exercise of discretion.' " (*Id*. at p. 972.) Rather, the court must " ' "take[ ] [the] petitioner's factual allegations as true" ' " and make a " ' "preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Id*. at p. 971.) Summary denial of the petition is appropriate where the record of conviction establishes the petitioner is ineligible for resentencing as a matter of law. (*People v. Estrada* (2022) 77 Cal.App.5th 941, 945; *People v. Coley* (2022) 77 Cal.App.5th 539, 548.)

We independently review the trial court's determination that the petitioner failed to make a prima facie showing for relief. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52; *People v. Eynon*

6

(2021) 68 Cal.App.5th 967, 975.) A denial at this stage is appropriate if the record of conviction demonstrates that the petitioner is ineligible for relief as a matter of law. (*Lewis*, *supra*, 11 Cal.5th at p. 960.)

Our independent review of the record has revealed no arguable issue that warrants further briefing or a basis for reversing the order. First, and as acknowledged by his appellate counsel, although the court stated it had read *Gomez*, there is no indication in the record that the court improperly relied on the opinion before denying the petition. Second, we reject Gomez's contention that the jury should never have been given certain instructions in his trial. In his direct appeal, Gomez had the right to raise any issues relating to his conviction, including how the jury was instructed. Indeed, in *Gomez*, the appellate court expressly rejected his argument that the trial court erred by instructing the jury on a theory of aiding and abetting.

Finally, we reject Gomez's suggestion that the court disregarded the jury's not true finding on the allegation that, in the commission of the murder, he personally used a firearm. A finding that he did not personally use a firearm does not necessarily mean that he did not aid and abet the killing. Aiding and abetting murder is not limited to providing supporting fire. As the instruction at trial stated, a defendant can aid and abet a crime if, "with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages or instigates by act or advice the commission of such crime with the same intent as the perpetrator or with the intent to facilitate the commission of such crime." As the Supreme Court has held, " 'To be an abettor the accused must have instigated or advised the commission of the crime or been present for the purpose of

7

assisting in its commission.' " (*People v. Durham* (1969) 70 Cal.2d 171, 181, italics omitted.)

In sum, none of Gomez's arguments in his supplemental brief show that his murder conviction cannot be sustained under current law or support reversal of the order on appeal.

## DISPOSITION

The order is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

LAVIN, Acting P. J.

WE CONCUR:

EGERTON, J.

ADAMS, J.